1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES L. BROOKS,

11              Plaintiff,            No. CIV S-03-2343 JAM EFB P

12        vs.

13   EDWARD S. ALAMEIDA, et al.,

14              Defendants.          ORDER AND
                                     FINDINGS AND RECOMMENDATIONS
15   _____/

16        Plaintiff is a prisoner without counsel in an action brought under 42 U.S.C. § 1983.

17   Pending before the court is: (1) plaintiff's March 10, 2008 motion to compel further discovery

18   responses from defendant Rohlfing, and (2) defendant Rohlfing's May 5, 2008 motion for

19   summary judgment.  For the reasons stated below, the court denies plaintiff's motion to compel

20   and recommends that defendant's motion for summary judgment be granted.

21   **I.  Alleged Facts**[1]

22        On December 23, 2002, plaintiff, an inmate confined at High Desert State Prison

23   (HDSP), fell down a flight of stairs and sustained injuries to his neck and back.  Second

24   _____

25        [1] This action also proceeds against defendants Alameida, Hubbard, Runnels and Roche,
     however, allegations against those defendants are not mentioned herein as they are not relevant
26   to the disposition of the pending motions.

1   Amended Complaint ("Compl.") ¶¶ 2, 13.  Plaintiff was unconscious for a short period of time

2   and almost his entire body was temporarily paralyzed.  *Id.* at ¶ 13.  He was airlifted to Redding

3   Medical Center, where he remained until December 25, 2002.  *Id.*  Plaintiff regained movement

4   in all of his limbs and it was determined that plaintiff did not have any broken bones.  *Id.*

5   However, the doctors found that plaintiff suffered from swelling of the vertebra column, causing

6   spasm.  *Id.*  As a result of his fall, plaintiff has a chronic condition and is constantly in pain.  *Id.*

7   When he attempts or performs strenuous exercises, he suffers spasm, spinal rigidity and a

8   dramatic increase in severe pain along his vertebra column.  *Id.*

9        On December 27, 2002, plaintiff was evaluated by defendant, a board certified

10   orthopedist at HDSP, who, plaintiff alleges, failed to adequately care for his condition.  *Id.* at

11   ¶¶ 7, 15.  Defendant prescribed plaintiff Chlorzoxazone and Ibuprofen, a wheelchair, and a

12   walker.  *Id.* at ¶ 15.  Plaintiff claims that defendant should have also provided plaintiff with

13   physical therapy for his spinal/vertebra column, a back brace, and an extra cushion, mattress, or

14   pillow.  *Id.*  According to plaintiff, however, defendant advised him that these items could not be

15   prescribed because of California's budget crisis.  *Id.*  Plaintiff alleges that since physical therapy

16   was not available at plaintiff's institution, defendant should have recommended that plaintiff be

17   transferred to an institution where plaintiff could receive physical therapy.  *Id.* at ¶ 16.  Plaintiff

18   further alleges that his prescriptions would expire every few weeks and defendant failed to

19   evaluate plaintiff before the expiration dates, resulting in plaintiff suffering without his pain

20   management medications for weeks and/or days at a time.  *Id.* at ¶ 15.

21        Defendant advised plaintiff to walk as much as possible in order to strengthen his spinal

22   column and ligaments, which plaintiff obeyed zealously.  *Id.* at ¶ 17.  On June 17, 2003,

23   however, inmates were involved in a riot, which resulted in a "state of emergency" lockdown for

24   an extended duration of two years.  *Id.*  This lockdown impeded plaintiff's progress toward

25   physical rehabilitation.  *Id.*  Plaintiff requested that he be allowed to walk on either the "dayroom

26   floor or concrete yard."  *Id.*  According to plaintiff, defendant disregarded this request, which

contributed to his physical and mental decline.  *Id.*  Plaintiff acknowledges that defendant was

not responsible for the lockdown, but states that he deliberately ignored a critical necessity of

plaintiff's, that is, walking on a daily basis, simply because of "financial stringency and/or his

unwilling[ness] to oppose custodian officials['] authority . . . ."  *Id.* at ¶ 19.

## II. Motion to Compel

Plaintiff's motion to compel seeks further responses to interrogatories 7-12 and requests

for production of documents.  He does not, however, indicate in what way defendant's responses

are deficient.  Plaintiff also seeks unspecified sanctions.

Plaintiff attaches to his motion defendant's responses to numbers 7-12.  Contrary to

plaintiff's argument, they show that defendant properly responded to these interrogatories.  In

interrogatory number 7, plaintiff asks defendant whether he evaluated plaintiff's medical

condition on December 23, 2002.  Defendant responds that he did not.  The remaining

interrogatories at issue assume that defendant evaluated plaintiff on December 23, 2002.  As

stated by defendant in response to interrogatory number 7, however, defendant did not evaluate

plaintiff on that date.  Thus, defendant's responses of "not applicable" to interrogatory numbers

8-12, are sufficient.

Plaintiff also seeks to compel responses to his request for production of documents.

However, plaintiff does not identify which requests he seeks to compel responses to or on what

grounds he brings his motion.  In his opposition brief, defendant attaches plaintiff's request for

production of documents and defendant's responses.  Plaintiff's request includes eight separate

requests for production of documents.  Defendant's responses indicated that as to some requests,

no such responsive documents could be located despite a diligent search, and as to others the

documents are not in defendant's possession, or have already been provided to plaintiff.  Without

knowing which responses plaintiff seeks to compel or on what grounds, the court cannot grant

plaintiff's motion.  Additionally, the party seeking production bears the burden of showing that

the opposing party has control of the sought-after documents.  *United States v. International*

1  *Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).  Plaintiff has not

2  met this burden.  For these reasons, plaintiff's motion to compel and request for sanctions is

3  denied.

4  **III.  Motion for Summary Judgment**

5          Plaintiff alleges that defendant was deliberately indifferent to his medical needs when,

6  following his December 23, 2002 fall down a flight of stairs, defendant failed to recommend

7  physical therapy, or a transfer to an institution that provided physical therapy, failed to prescribe

8  plaintiff a back brace, or an extra cushion, pillow or mattress, allowed plaintiff's prescriptions

9  for his pain medications to expire, and denied plaintiff's inmate appeal requesting that he be

10  allowed to walk outside his cell during a period of extended lockdown.  Defendant moves for

11  summary judgment on the ground that the undisputed facts reveal no triable issues of fact exist to

12  support plaintiff's claim against him.

13          **A.  Summary Judgment Standards**

14          Summary judgment is appropriate when it is demonstrated that there exists "no genuine

15  issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

16  Fed. R. Civ. P. 56(c).

17              Under summary judgment practice, the moving party always bears the initial
                responsibility of informing the district court of the basis for its motion, and
18              identifying those portions of the pleadings, depositions, answers to
                interrogatories, and admissions on file, together with the affidavits, if any, which
19              it believes demonstrate the absence of a genuine issue of material fact.

20  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

21          Summary judgment avoids unnecessary trials in cases with no genuinely disputed

22  material facts.  *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468,

23  1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to

24  require submission to a jury or whether it is so one-sided that one party must prevail as a matter

25  of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, Rule 56 serves to

26  screen the latter cases from those which actually require resolution of genuine disputes over

4

1   material facts; e.g., issues that can only be determined through presentation of testimony at trial

2   such as the credibility of conflicting testimony over facts that make a difference in the outcome.

3   *Celotex*, 477 U.S. at 323.

4        Focus on where the burden of proof lies as to the issue in question is crucial to summary

5   judgment procedures.  "[W]here the nonmoving party will bear the burden of proof at trial on a

6   dispositive issue, a summary judgment motion may properly be made in reliance solely on the

7   'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed,

8   summary judgment should be entered, after adequate time for discovery and upon motion,

9   against a party who fails to make a showing sufficient to establish the existence of an element

10  essential to that party's case, and on which that party will bear the burden of proof at trial.  *See*

11  *id.* at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever

12  is before the district court demonstrates that the standard for entry of summary judgment, as set

13  forth in Rule 56(c), is satisfied."  *Id.* at 323.

14       If the moving party meets its initial responsibility, the opposing party must establish that

15  a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v.*

16  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing

17  party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the

18  claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

19  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and

20  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

21  party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In this

22  regard, "a complete failure of proof concerning an essential element of the nonmoving party's

23  case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  In attempting to

24  establish the existence of a factual dispute that is genuine, the opposing party may not rely upon

25  the allegations or denials of its pleadings but is required to tender evidence of specific facts in

26  the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).   The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On September 15, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154

1  F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.*

2  *Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

3      **B. Undisputed Facts**

4      At all relevant times herein, defendant was a board certified orthopedist and physician at

5  HDSP, where plaintiff was incarcerated.  Def.'s Mot. for Summ. J., Stmt. of Undisp. Facts in

6  Supp. Thereof ("Def.'s SUF") 1, 3; Pl.'s Opp'n to Def.'s Mot. for Summ. J ("Pl.'s Opp'n"),

7  Stmt. of Undisp. Facts in Supp. Thereof ("Pl.'s SUF") 1, 3.  On December 25, 2002, after falling

8  down a flight of stairs two days earlier, defendant prescribed to plaintiff Chlorzoxazone (a

9  muscle relaxer) and Ibuprofen (an analgesic used for pain relief).  Def.'s SUF 4, 6; Pl.'s SUF 4,

10  6.  Defendant also prescribed to plaintiff a wheelchair.  *Id.*

11      On December 27, 2002, defendant saw plaintiff and performed a physical examination,

12  including range of motion testing.  Def.'s SUF 7; Pl.'s SUF 7.  Defendant's assessment was that

13  plaintiff was suffering residual muscle spasm of the cervical spine, with some weakness of the

14  lower left leg.  *Id.*  Following the examination, defendant apprised plaintiff that his injury would

15  get better over time and that he should walk as much as possible to gain strength in his back,

16  neck, legs and arms.  Def.'s SUF 8; Pl.'s SUF 8.  Defendant further advised plaintiff that he

17  could use warm towels to relax the muscles in his neck and back.  *Id.*  Finally, he advised

18  plaintiff that he should have a full recovery if he followed through with the recommended

19  exercise program.  *Id.*  Defendant then renewed plaintiff's prescription for pain medications for

20  the period of December 27, 2002 through January 6, 2003 and also prescribed a walker for

21  ambulating short distances, and a wheelchair for long distances.  *Id.*

22      Thereafter, on January 16, 2003, defendant Rohlfing was notified by a Medical Technical

23  Assistant who had gone to see plaintiff at his cell, that plaintiff continued to suffer back pain and

24  spasms and had requested a renewal of his pain medications.  Def.'s SUF 9; Pl.'s SUF 9.  Based

25  upon plaintiff's complaints, Rohlfing authorized a renewal of the pain medications for an

26  additional two weeks from January 17, 2003 to January 31, 2003.  *Id.*

1    HDSP was on continuous lockdown for two years from June 2003 to June 2005 following

2    a race riot. Def.'s SUF 15; Pl.'s SUF 10. During the lockdown, plaintiff filed an inmate

3    grievance requesting access outside his cell to walk. *Id.* Defendant denied plaintiff's request.

4    *Id.* During the course of the two year lockdown, while inside of his cell, plaintiff was able to

5    walk in place, jog in place and perform calisthenics and gradually got stronger. Def.'s SUF 16;

6    Pl.'s SUF 11.

7    Plaintiff testified at his deposition that during the period of time that defendant treated

8    him, he gradually got better by following the exercise regime and therapies prescribed by

9    defendant. Def.'s SUF 13; Pl.'s Dep. at 55:8-14, 80:18-81:2, 92:7-23.

10   **C. Disputed Facts**

11   Plaintiff's affidavit states that during the December 27, 2002 examination, he and

12   defendant became argumentative, and plaintiff requested to be seen by a different doctor. Pl.'s

13   Opp'n, Pl.'s Dec. ("Pl.'s Dec.") at 1; *see also* Pl's Opp'n at 16 (copy of physician's progress

14   notes). Plaintiff adds that even though his prescriptions for pain medications were set to expire

15   January 6, 2003, defendant did not schedule a follow up appointment with plaintiff prior to the

16   expiration date. Pl.'s Dec. at 1. Accordingly, plaintiff states, he was without his pain

17   medications from January 6 to January 16, 2003, and suffered severe pain during that time. *Id.*

18   Although defendant renewed his pain medications on January 16, 2003, the prescriptions again

19   expired on January 31, 2003, and plaintiff had to wait another two weeks before receiving more

20   medication. *Id.* Plaintiff also adds that most of the other physicians who treated him after

21   defendant scheduled follow up appointments, and that before he and defendant had an argument,

22   defendant frequently scheduled follow up appointments. *Id.* at 2.

23   Plaintiff also states that defendant informed him that his "hands were tied" by

24   California's budget crisis and that he could not provide plaintiff with physical therapy, a back

25   brace, an extra cushion, mattress, or pillow. *Id.* at 1. Plaintiff also presents evidence that other

26   physicians later showed him exercises that helped him become stronger and decreased his

1   spasms, and that he was eventually prescribed physical therapy for his back and neck.  *Id.* at 2;

2   Pl's Opp'n at 17, 18, 22 (copies of physician's progress notes).

3          According to defendant, however, he informed plaintiff that physical therapy was not

4   indicated for his injury, and thus, there was no reason to recommend transfer to another

5   institution on that basis.  Def.'s SUF 8.  Additionally, defendant states that neither an extra

6   cushion, extra mattress, a pillow or a back brace were medically indicated for plaintiff's injuries.

7   Def.'s SUF 11.

8          **D.  Legal Standard for Eighth Amendment Claims**

9          To prevail on a claim under the Eighth Amendment for inadequate prison medical care, a

10  prisoner must demonstrate "deliberate indifference to serious medical needs."  *Jett v. Penner*,

11  439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A

12  plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the

13  condition could result in further significant injury or the unnecessary and wanton infliction of

14  pain and (2) that the defendant's response was deliberately indifferent.  *Id.*

15         To act with deliberate indifference, a prison official must both be aware of facts from

16  which the inference could be drawn that a substantial risk of serious harm exists, and he must

17  also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference

18  in the medical context may be shown by a purposeful act or failure to respond to a prisoner's

19  pain or possible medical need.  *Jett*, 439 F.3d at 1096.  Mere 'indifference,' 'negligence,' or

20  'medical malpractice' will not support this cause of action."  *Broughton v. Cutter Laboratories*,

21  622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v.*

22  *Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a

23  medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").

24  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires

25  'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Farmer*, 511 U.S. at

26  835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

E. Analysis

    1. __Physical Therapy, Back Brace, Pillow and Extra Cushion or Mattress__

Plaintiff alleges that defendant acted with deliberate indifference to his serious medical needs because defendant stated that, because of California's budget crisis**,** he was not recommending physical therapy, a back brace, a pillow, or an extra cushion or mattress.  Compl. ¶ 15.  There is no doubt that the failure to provide treatment because of a tight budget can amount to deliberate indifference.  *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Here, however, defendant did not fail to treat plaintiff.  The undisputed facts show that defendant physically examined plaintiff and tested for range of motion, determined that plaintiff was suffering residual spasms of the cervical spine with weakness of the lower left leg, and advised plaintiff to walk as much as possible to build strength, to use warm towels to relax his back and neck, and prescribed plaintiff two pain medications, as well as a walker for ambulating short distances and a wheelchair for long distances.  Def.'s SUF 7, 8; Pl.'s SUF 7, 8.

Because the undisputed facts show that defendant did not fail to treat plaintiff, the question becomes whether the treatment he provided was acceptable under Eighth Amendment standards.  This is not a tort claim of medical malpractice.  Rather plaintiff is pressing a Section 1983 claim predicated on the allegation that the medical care was so lacking that it violated the Eighth Amendment's prohibition of cruel and unusual punishment.  This requires a showing of deliberate indifference to a serious medical need.  "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).  And a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference.  *See Toguchi*, 391 F.3d at1058-60.  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances and that he chose this course in conscious disregard of an

excessive risk to plaintiff's health.  *Id.* at 1058.

Defendant has presented evidence that plaintiff's injuries did not indicate a need for physical therapy, a back brace, or an extra cushion, mattress or pillow.  Def.'s SUF 8, 11, 12. The fact that other physicians later recommended physical therapy and that plaintiff found it to be helpful, does not amount to a showing that defendant's alternative treatment was medically unacceptable or, more particularly, was chosen in conscious disregard of an excessive risk to plaintiff's health.  Furthermore, plaintiff testified at his deposition that during the period of time that defendant treated him, he gradually got better by following the exercise regime and therapies prescribed by defendant.  Def.'s SUF 13.  Although plaintiff disagrees with the choice of treatment provided, he has not show that such choice amounts to deliberate indifference. Even when plaintiff's allegations are viewed in the light most favorable to him, they do not raise a triable issue of fact with respect to whether defendant acted with deliberate indifference to plaintiff's serious medical needs.

## 2. <u>Provision of Medications</u>

Plaintiff also fails to raise a triable issue of fact on his claim that defendant was deliberately indifferent to his medical needs by allowing his prescriptions to expire.  *See* Compl. ¶ 15.  Although plaintiff presents evidence that he and defendant had an argument during their December 27, 2002 appointment, this does not establish that defendant was deliberately indifferent to his medical needs.  Instead, the undisputed facts show that defendant was responsive to plaintiff's complaints of pain.  On December 25, 2002, defendant prescribed plaintiff Chlorzoxazone (a muscle relaxer) and Ibuprofen (an analgesic used for pain relief). Def.'s SUF 6; Pl.'s SUF 6.  On December 27, 2002, after a physical examination of plaintiff, defendant renewed plaintiff's prescriptions for another 10 days – through January 6, 2003. Def.'s SUF 7, 8; Pl.'s SUF 7, 8.  Plaintiff waited until January 16, 2003 to request that his prescriptions be renewed, and on that same day, defendant again renewed plaintiff's prescriptions for another two weeks.  Def.'s SUF 9; Pl.'s SUF 9.  Plaintiff states he was in severe

pain during the period of time he was without his pain medications.  Pl.'s Dec. at 1.  However, there is no evidence that defendant knew that plaintiff was in pain during this period of time, and intentionally delayed in renewing plaintiff's prescriptions.  Furthermore, plaintiff's statements that other doctors scheduled follow up appointments prior to the expiration dates of his prescriptions, and that defendant had scheduled follow up appointments prior to their argument, does not establish deliberate indifference, as the undisputed facts show that defendant did not disregard any excessive risk to plaintiff's health.  *See Farmer*, 511 U.S. at 837.  Plaintiff may not have agreed with the course of treatment prescribed by defendant; however, disagreement over the course of treatment, or mere negligence in treatment does not raise to the level of an Eighth Amendment violation.  *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

### 3.  Denial of Medical Chrono for Access Outside Cell During Lockdown

It is undisputed that defendant denied plaintiff's request (appeal log no. 05-606) to walk outside his cell during the extended lockdown at HDSP.  Def.'s SUF 15; Pl.'s SUF 10.  However, plaintiff has failed to show that defendant was deliberately indifferent to his medical needs by denying this request.  The exhibits attached to plaintiff's opposition show that he submitted his request on January 7, 2005 and that it was denied on April 4, 2005.  Pl.'s Opp'n at 39-40 (copy of first level response to appeal log no. 05-606), 51-53 (copy of plaintiff's accommodation request, appeal log no, 05-606).  Plaintiff contends that defendant was deliberately indifferent in denying this request because defendant himself had recommended that plaintiff walk as much as possible in order to recover from his injuries.  *See* Compl. ¶¶ 17, 19; Pl.'s Opp'n at 11-12.  However, defendant made this recommendation to plaintiff in December of 2002, over two years before plaintiff submitted his request.  *See* Def.'s SUF 8; Pl.'s SUF 8.  Furthermore, defendant denied the request on the ground that walking outside his cell had *not* been recommended to plaintiff at his recent March 23, 2005 medical evaluation with another physician.  Pl.'s Opp'n at 40.  Finally, plaintiff's own deposition testimony reveals that he was able to walk, jog in place, and perform calisthenics inside of his cell, and that by performing

these exercises, he gradually got stronger.  Def.'s SUF 16; Pl.'s SUF 11.  Plaintiff has failed to present evidence from which a jury reasonably could conclude that defendant Rohlfing acted with deliberate indifference.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252; *Celotex Corp. v. Catrett*, 477 U.S. at 323.  Therefore, summary judgment must be granted in favor of this defendant.

### F.  Qualified Immunity

Defendant further contends that he is entitled to qualified immunity because there is no evidence that he violated plaintiff's constitutional rights.  Defs.' Mot. for Summ. J. at 15-16. Otherwise stated, since plaintiff has not satisfied his burden on summary judgment, defendant is entitled to qualified immunity.  However, because the court resolves the summary judgment motion relating to the merits in favor of defendant, there is no reason to inquire further into an asserted defense of qualified immunity.  *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007).

### IV.  Conclusion

Accordingly, it is hereby ORDERED that plaintiff's March 10, 2008, motion to compel is denied.

Further, for the reasons stated above, it is hereby RECOMMENDED that defendant Rohlfing's May 5, 2008 motion for summary judgment be granted and that judgment be entered in his favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

////

////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 9, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE