IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES L. BROOKS,

        Plaintiff,                      No. CIV S-03-2343 JAM EFB P

    vs.

EDWARD S. ALAMEIDA, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. This action proceeds on plaintiff's October 23, 2006 second amended complaint against defendants Roche, Alameida, Runnels, and Hubbard ("defendants") on plaintiff's Eighth Amendment deliberate indifference claims. Plaintiff alleges (1) Roche, Runnels, and Alameida failed to develop and implement policies that would have entitled him to a ground floor cell and prevented him from falling down the stairs; (2) Roche denied his request for physical therapy or a transfer to an institution that offered physical therapy; and (3) Roche, Runnels, Hubbard, and Alameida interfered with his recovery by failing to allow him to exercise outside of his cell during a lockdown. Defendants move for summary judgment. For the reasons stated below, it is recommended that their motion be granted.

////

1

## I. Undisputed Facts

From February 1998 through October 2006, plaintiff was an inmate in the custody of the the California Department of Corrections and Rehabilitation ("CDCR") at High Desert State Prison ("HDSP") in Susanville, California. Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Stmt. of Undisputed Facts in Supp. Thereof ("SUF") 1. At all times relevant, defendants Roche, Runnels, Hubbard, and Alameida were employed by CDCR. SUF 2-7. Runnels was Warden at HDSP and Alameida was Director of CDCR. SUF 4-5. Roche was the Chief Physician and Surgeon at HDSP between 2002 and 2003, and Chief Medical Officer of HDSP from 2003 through 2007. SUF 2; Defs.' MSJ, Decl. of Roche ¶ 3. Hubbard was an Assistant Deputy Director at CDCR from 2003 to 2005, and was the Acting Associate Director of CDCR in 2005. SUF 6-7.

On December 6, 2002, plaintiff had surgery to correct a condition called hammer toe. SUF 9. The procedure involved removing tissue from plaintiff's second toe on his right foot, and inserting a metal rod into the toe to correct the condition. SUF 10.

On December 7, 2002, plaintiff was evaluated by Dr. Watson, a physician at HDSP. SUF 11. After examining plaintiff, Dr. Watson ordered that plaintiff have crutches and a lower bunk, and cleared plaintiff to the yard. SUF 12; Defs.' MSJ, Ex. 4. Dr. Watson did not issue instructions that plaintiff be housed in a ground floor cell; nor did plaintiff request a ground floor cell from any medical staff. SUF 13-14. Plaintiff did not need a ground floor cell while recovering from the surgery. SUF 45-47.

As Chief Physician and Surgeon, Roche did not participate in deciding whether an inmate's medical condition required an accommodation chrono. SUF 51-53. Further, Alameida and Runnels always deferred to the treating physician's professional judgment regarding whether an inmates's medical condition necessitated a ground floor cell. SUF 49-50.

CDCR and HDSP did not implement a policy that prescribed lower tier cells for inmates based on specific medical conditions because it would be impractical, as one cannot anticipate every medical condition or need and prescribe a particular, static, housing accommodation

2

without evaluating the patient on an individual basis. SUF 36. The policy was, therefore, to rely on primary care physicians to evaluate each patient on a case-by-case basis, and prescribe the appropriate treatment based within the ordinary standards of medical care in the community. SUF 37. Primary care providers were expected to exercise their professional skill and judgment to determine whether and what accommodation is medically indicated for any given patient. SUF 38. Treating physicians could prescribe a lower tier cell housing for an inmate if the inmate's condition required it. SUF 39. Temporary lower tier chronos were always prescribed on a case-by-case basis. SUF 39. And a primary care provider could not issue an accommodation chrono for a lower tier cell unless such treatment was medically indicated for an inmate. SUF 41.

From December 7 to December 19, 2002, plaintiff resided in administrative segregation in an upper tier cell, where he did not complain about his cell assignment to correctional or medical staff. SUF 16-17, 20. On December 19, 2002, plaintiff was transferred to an upper tier cell in general population. SUF 17-18.

Between December 19 and December 23, 2002, plaintiff did not fall when negotiating the stairs to and from his cell. SUF 21. Plaintiff did not request assistance from correctional staff when using the stairs. SUF 19.

On December 23, 2002, plaintiff fell down a flight of stairs. SUF 22. Plaintiff had not been denied any requested medical care between his hammer toe surgery and his fall. SUF 15. The fall left plaintiff unconscious and briefly paralyzed. SUF 22, 24. Plaintiff was transported to Lassen Community Hospital in Susanville, and then airlifted to Redding Medical Center. SUF 22-25.

Physicians at Redding Medical Center discovered that plaintiff suffered no broken bones. SUF 26. Plaintiff's paralysis dissipated after 18 hours, after which he was able to walk on his own. SUF 26. Plaintiff was kept in Redding for observation and administered pain medication. SUF 27.

3

Once plaintiff returned to HDSP, Dr. Rohlfing cleared plaintiff for housing on the yard after prescribing pain medication and issuing a chrono for a ground floor cell, a lower bunk, and a wheelchair.[1]  SUF 28.  On December 27, 2002, Dr. Rohlfing examined plaintiff.  SUF 29.  The examination revealed that plaintiff had a spasm of the cervical spine and some weakness in his left quadriceps that Dr. Rohlfing determined was temporary.  SUF 30.  Dr. Rohlfing concluded that plaintiff suffered from a residual muscle spasm of the cervical spine and weakness in his left leg.  SUF 32.

Following the examination, Dr. Rohlfing recommended that plaintiff walk as much as possible to gain strength in his back, neck, legs, and arms, and advised plaintiff to use warm towel compresses to relax the muscles in his neck and back.  SUF 33.  In addition, Dr. Rohlfing recommended an exercise program for plaintiff to follow.  SUF 33.

According to Dr. Rohlfing's medical opinion, plaintiff's injuries did not require physical therapy or a transfer to an institution that offered physical therapy.  SUF 34.

HDSP was on lockdown from June 2003 to June 2005 because of violence between black and white inmates.  SUF 55.  In January 2005, plaintiff filed an inmate grievance, requesting access outside his cell to walk.  SUF 57.  Dr. Rohlfing and Dr. Roche responded to plaintiff's appeal at the first and second levels.  SUF 58.  Despite the lockdown, plaintiff was able to walk in place, jog in place, and perform calisthenics and muscle strengthening exercises.  SUF 60. Plaintiff eventually received physical therapy during the lockdown.  SUF 59.  Plaintiff gradually improved his strength by performing Dr. Rohlfing's prescribed exercises in his cell.  SUF 61.

Defendants Alameida, Hubbard, and Runnels were not aware that plaintiff required exercise as part of a medically prescribed treatment plan.  SUF 62.  They were never aware of whether the lockdown prevented plaintiff from performing medically-prescribed exercises.  SUF 63.  And they never received any complaints from plaintiff regarding a lockdown or its impact

---

[1] Dr. Rohlfing was named as a defendant in this lawsuit, but the court granted summary judgment in his favor on March 26, 2009.  Dckt. Nos. 142, 147.

4

on plaintiff's health or safety.  SUF 64.

**II.     Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and [ ] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party

seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law, *id.*, which here involves the question of whether the defendants were deliberately indifferent to serious medical needs of the plaintiff. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

////

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

On September 15, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III.     Standard for Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, plaintiff must show: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the alleged rights deprivation, as there is no respondeat superior liability under section 1983.  *Jones*, 297 F.3d at 934.  That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).  Because respondeat superior liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*  To be held liable, "the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Starr v. Baca*, __ F.3d __, 2011 U.S. App. LEXIS 15283, at \*6 (9th Cir. 2011) (quotations omitted).  Rather, the supervisor's participation and resulting liability could be based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others.  *Id.* at \*6, 13-4 (including acquiescence "in a deficient policy that was a moving force behind the harm caused to the

plaintiff") (internal quotation omitted); *see also Hanson v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

To state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

////

However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

Finally, it is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

## IV. Discussion

Defendants advance the following arguments in support of their motion for summary judgment: (1) plaintiff's assignment to an upper tier cell did not pose an unreasonable risk of harm of which defendants were aware, and CDCR and HDSP's policy regarding medical care was not constitutionally deficient because it mandated care consistent with constitutional parameters; (2) Roche did not violate plaintiff's Eighth Amendment rights when he denied plaintiff's request for physical therapy because plaintiff did not need physical therapy; (3) the institutional lockdown at HDSP did not interfere with plaintiff's medical care, and Alameida, Hubbard, and Runnels were not aware that the HDSP lockdown posed a serious risk of harm to plaintiff's health; and (4) defendants are entitled to qualified immunity because they violated no constitutional right and their conduct was objectively reasonable.

### A. Plaintiff's Assignment to Upper Tier Cell After Hammer Toe Surgery

Plaintiff claims that Roche, Runnels, and Alameida failed to develop and implement policies that would have entitled him to a ground floor cell and prevented him from falling down the stairs. After careful review of the record, the court finds that are no triable issues of fact with respect to this claim.

////

First, as defendants explain, there is no broad policy that would have entitled plaintiff to a ground floor cell. Rather, because each patient has different medical needs and each must be evaluated on an individual basis. SUF 36. Thus, the policy in place relies on primary care physicians to determine the appropriate treatment for each patient based upon the ordinary standards of medical care in the community. SUF 37-38. Here, plaintiff's treating physician did not order that plaintiff be placed in a ground floor cell following his surgery because such placement was not medically necessary. SUF 13, 45-48. Plaintiff produces no evidence that his placement in an upper tier cell exposed him to a substantial risk of harm.

Second, Roche, Runnels, and Alameida did not participate in deciding whether an inmate's medical condition required an accommodation chrono. SUF 49-53. Nor did these defendants deny plaintiff any requested medical care between his surgery and his fall. SUF 13-15. Plaintiff never alerted HDSP staff that he was dissatisfied with his upper tier cell assignment, or that he needed either a lower tier cell or assistance using the stairs. SUF 20-21. Thus, defendants could not have consciously disregarded any risk of harm to plaintiff based upon his housing assignment. Additionally, there is no evidence that defendants, each of whom occupied a supervisory position, SUF 2-5, acted pursuant to or acquiesced in any CDCR of HDSP policy that caused others to consciously disregard an unreasonable risk of harm to plaintiff.

Plaintiff does not submit any evidence with his opposition brief. He argues, however, that Dr. Watson lacked "due care" by failing to ensure that plaintiff was housed in a lower tier cell following the surgery. Pl.'s Opp'n to Defs.' MSJ ("Opp'n") at 2. But as defendants respond in their reply brief, plaintiff's belief that he should have received a ground floor cell fails to establish a genuine dispute of material fact to avoid summary judgment. As a threshold matter, plaintiffs assertion is not supported by admissible evidence or qualified medical opinion. But more importantly, plaintiff's mere disagreement with the medical treatment provided is insufficient to show deliberate indifference. Thus, even if plaintiff presented a medical opinion a

11

qualified expert disagreeing with the treatment decisions in question, lack of due care, alone, cannot establish deliberate indifference for purposes an Eighth Amendment claim. Finally, plaintiff has not shown that defendants were aware of plaintiff's cell assignment or of any risk of harm in connection with his cell assignment–if indeed there was any such risk. Defs.' Reply to Pl.'s Opp'n ("Reply") at 3-4 (citing *Toguchi*, 391 F.3d at 1058 and *Estelle*, 429 U.S. at 106).

The court finds there is no dispute as to whether plaintiff's medical condition required a ground floor cell or whether defendants knew or had reason to know that plaintiff's assignment to an upper tier cell posed an unreasonable risk of harm to him. Accordingly, this claim, premised on defendants' alleged deliberate indifference to plaintiff's entitlement to a ground floor cell, should not proceed to trial.

**B.   Roche's Denial of Plaintiff's Request for Physical Therapy or Transfer to an Institution That Offered Physical Therapy**

Plaintiff claims Roche was deliberately indifferent to his medical needs when he denied plaintiff's request for physical therapy or transfer to an institution that offered physical therapy.

The evidence establishes that plaintiff's injuries did not require physical therapy or a transfer to an institution that offered physical therapy. SUF 34. Additionally, this court previously determined that Dr. Rohlfing's failure to recommend physical therapy for the same injuries did not violate plaintiff's Eighth Amendment rights. Dckt. No. 142 at 10-11 ("Although plaintiff disagrees with the choice of treatment provided, he has not show that such choice amounts to deliberate indifference."); Dckt. No. 147.

In his opposition, plaintiff argues that a jury could infer that the denial of physical therapy amounted to deliberate indifference based upon the fact that plaintiff was eventually provided with physical therapy. Opp'n at 3. As this court previously found, however, "[t]he fact that other physicians later recommended physical therapy and that plaintiff found it to be helpful, does not amount to a showing that [the] alternative treatment was medically unacceptable or, more particularly, was chosen in conscious disregard of an excessive risk to plaintiff's health."

12

Dckt. No. 142 at 11.

As there is no genuine dispute for trial here, the court finds defendants are entitled to summary judgment on this claim.

## C. The Lockdown and Plaintiff's Medical Needs

Plaintiff claims defendants interfered with his recovery by failing to allow him to exercise outside of his cell during the lockdown at HDSP. However, there is no evidence presented that establishes that the lockdown prevented, delayed, or interfered with plaintiff's recovery. Indeed, the evidence before the court establishes the opposite and shows that defendants did not possess the requisite deliberate indifference.

As this court previously found, plaintiff's own deposition testimony revealed that during the lockdown, "he was able to walk, jog in place, and perform calisthenics inside of his cell, and that by performing these exercises, he gradually got stronger." Dckt. No. 142 at 12-13. This evidence remains undisputed. SUF 33, 60-61.

Additionally, defendants Alameida, Hubbard and Runnels did not know about plaintiff's injury, his prescribed rehabilitation program, or whether the lockdown interfered with plaintiff's exercise needs. SUF 62-64.

In his opposition, plaintiff contends that the CDCR Operation Manual and various regulations demonstrate that Alameida, Hubbard, and Runnels participated in implementing the lockdown. Opp'n at 3. The materials referenced by plaintiff do not show that theses defendants participated in implementing the lockdown. Even if the materials did establish defendants' involvement in the lockdown, the materials do not suggest that the defendants actually knew or had reason to know, about plaintiff's injury, his prescribed rehabilitation program, or whether the lockdown interfered with plaintiff's exercise needs. *See* Reply at 5-6.

Plaintiff also argues a jury could infer that Roche was deliberately indifferent because Roche knew, through appeal number HDSP-C-05-00606, the extent of plaintiff's condition and pain and that the course of plaintiff's treatment was largely ineffective. Opp'n at 2, 4. A copy of

that appeal is provided with defendants' motion for summary judgment. Defs.' MSJ, Ex. 7. In partially granting the appeal at the second level of review, Roche informed plaintiff as follows:

> Inmate Brooks, your medical complaints have been evaluated and treatment has been provided. You were referred to physical therapy for strengthening exercises and your pain medication was changed to Indocin. There is no request for you to have knee surgery, to be issued a cane or to be allowed to walk when your yard is locked down. In the past you have seen an orthopedist. You were diagnosed with having tendinitis; exercise was recommended and a neoprene knee brace was issued to you.
> . . .
> Based on this information, your appeal is partially granted. You are receiving therapy and medication for pain management.

Defs.' MSJ, Ex, 7 (Second Level Response). Roche's response notes that plaintiff had been evaluated and treated for his medical complaints, that he was provided pain medication and physical therapy, and that no doctor had ordered that plaintiff be allowed to walk during the lockdown. While the appeal alerted Roche to plaintiff's complaints of pain and inadequate treatment, a jury could not reasonably infer from the appeal alone, that Roche had knowledge of a substantial risk of serious harm to plaintiff.

Accordingly, the court finds plaintiff has failed to demonstrate there is a genuine issue of material fact regarding this claim, and defendants should be granted summary judgment.

**D.   Qualified Immunity**

For the reasons discussed above, the court concludes that defendants are entitled to summary judgment on each of plaintiff's claims. Therefore, the court need not address defendants' argument for qualified immunity.

**V.   Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that defendants' November 17, 2010 motion for summary judgment be granted and the Clerk be directed to close the case..

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 23, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE